FILED & ENTERED

MAY 09 2011

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY zamora   DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No.: 6:10-bk-50349-SC |
| RICHARD JOHN RINARD, | Adversary No.: 6:11-ap-01660-SC |
| Debtor(s), | Chapter: 7 |
| RICHARD JOHN RINARD, Debtor and HELEN R. FRAZER, Chapter 7 Trustee, | **MEMORANDUM OPINION** |
| Plaintiff(s), | **Hearing Date:** **Date: May 9, 2011** **Time: 11:00 a.m.** **Location: Video Hearing Room 126,** **3240 Twelfth Street, Riverside, CA 92501** |
| Vs. | |
| POSITIVE INVESTMENTS, INC., | **and** |
| Defendant(s). | **Ronald Reagan Federal Building & Court House, Courtroom 5C** **411 West Fourth Street** **Santa Ana, CA 92701** |

Before the Court is an Emergency Motion pursuant to Rule 65 of the Federal Rules of

Civil Procedure filed by Movants Richard John Rinard (the "Debtor") and Helen R. Frazer, the

Chapter 7 Trustee for the Debtor's Bankruptcy Estate ("Trustee") (together the "Movants")

seeking entry of a temporary restraining order and/or a preliminary injunction order enjoining

Defendant Positive Investments, Inc. (the "Defendant" or "Respondent") and its officers,

agents, servants, employees, and attorneys and those in active concert or participation with

them, from foreclosing on commercial real property of the bankruptcy estate commonly known

as 1812 - 1816 W. Foothill, Upland, CA, 91786 (the "Foothill Parcels").

> The Court is presented with, among others, the following issues:

> (1) Does the Automatic Stay remain in existence, with respect to Estate Property, at this
> time?

> (2) Are decisions by the Bankruptcy Appellate Panel authoritative and precedential?

> (3) Are the Movants entitled to the Temporary Restraining Order or Preliminary
> Injunction Order they seek under the presented circumstances?

## Background

> The pending Chapter 7 case is the Debtor's second case filed within a year. The Debtor

originally filed a voluntary petition under Chapter 7 of Title 11 of the United States Code on

November 9, 2010, as case no. 6:10-bk-46358. That case was dismissed by order of the Court

on November 30, 2010, when the Debtor's Schedules and Statements were not timely filed

with the Court.

> Following the entry of the order of dismissal of the Debtor's first case on November 30,

2010, on December 15, 2010, this case (the Debtor's second chapter 7 case) was

commenced.  Apparently cognizant of the provisions of 11 U.S.C. §362(c)(3)(A), which

instructs  that "the stay under subsection (a) with respect to any action taken with respect to a

debt or property securing such debt or with respect to any lease shall terminate *with respect to*

*the debtor* on the 30th day after the filing of the later case." (*emphasis added*), the Debtor,

through counsel, twice sought to have a hearing on his request to extend the automatic stay.

On January 12, 2011 (Dk. No. 16), the Debtor filed an "Emergency motion For Order Imposing a Stay or Continuing the Automatic Stay as the Court Deems Appropriate" which was denied by an order of the Court entered January 13, 2011 (Dk. No. 20).  On January 13, 2011 (Dk. No. 21), the Debtor renewed his request and filed an "Application shortening time, in addition to Notice of Motion and Motion in Individual Case for Order Imposing a Stay or Continuing the Automatic Stay as the Court Deems Appropriate" which was again denied by the Court by an order entered January 13, 2011 (Dk. No. 23).

Due to procedural error (a fee was not paid) on the first attempt, the Debtor's motion to extend the stay was denied.  It is not clear to this Court why the second attempt was denied without a hearing[1]; however, the thirty day period passed after January 14, 2011.

**The Estate Property at Issue**

Part of the Debtor's Bankruptcy Estate is the previously identified Foothill Parcels, which are the subject of this Motion.  According to the Movants, "foreclosure proceedings have been instituted by creditor Positive Investments, Inc., 222 S. Santa Anita Ave, Arcadia, CA 91006, against certain real property commonly known as 1812 - 1816 W. Foothill, Upland, CA, 91786 (the "Foothill Parcels"). The foreclosure sale is scheduled for May 17, 2011."  Motion, page 1:3-6, and the D. Edward Hays Declaration (the "Hays Declaration") stating that the Respondent "published" a Notice of Sale, ¶ 8, page 11:9-12.[2]  There is further evidence before the Court as to when the Respondent instituted "foreclosure proceedings" or "published" a Notice of Sale, that date being April 11, 2011[3], which the Court observes is after the Petition

---

[1] These motions were considered and rejected by the Honorable Thomas B. Donovan prior to the transfer of the case to this Court on or about February 1, 2011.

[2] Certain Evidentiary Objections have been made by the Respondent, but not to ¶ 8 of the Hays Declaration.

[3] The Movants have requested, and this Court takes judicial notice of, (1) the Declaration of D. Edward Hays in support of Joint Emergency Motion of Debtor and Trustee for Order

Date of this case. The Respondent has not addressed the act or timing of publication of the

Notice of Sale.

  The Court has carefully examined the Debtor's Schedules, the Court Docket of this

case, and the evidence presented within this Motion.  The Foothill Parcels are properly

scheduled and the Court can find no actions by the Trustee or operations of law that indicate

that the Foothill Parcels have passed from the Estate at this time. Therefore, there is no doubt,

and the Court can find no assertions from any of the parties here to the contrary, that the

Foothill Parcels remain part of the Estate.  Finally, the Court has reviewed the Debtor's sworn

Schedules and finds, for purposes of this Motion only, that the value of the Foothill Parcels is

$1,500,000.00.  In reviewing the pleadings, the Court finds, for purposes of this Motion only,

that the claim secured by the lien held by the respondent on the Foothill Parcels is

approximately $889,000.00.  Finally, the Court finds that, for purposes of this Motion only,

there is significant equity in the Foothill Parcels that inure to the benefit of the Estate and/or

Debtor.

**The Motion For Temporary Restraining Order and/or a Preliminary Injunction Order**

  On April 29, 2011, the Debtor and the Trustee jointly filed an emergency motion entitled

"Joint Emergency Motion of Debtor and Trustee for Order Determining That Automatic Stay

Pursuant to 11 U.S.C. Section 362(a) Has Not Been Terminated With Respect to the Estate;

Memorandum of Points and Authorities; and Declarations of D. Edward Hays and Richard

John Rinard; with Proof of Service."  (Dk. No. 44). The Debtor and Trustee's Motion requested

that this Court make an order stating that the automatic stay was not terminated with respect to

---

Determining that Automatic Stay Pursuant to 11 U.S.C. §362(a) Has Not Been Terminated
With Respect to the Estate (Dk. No. 44), and (2) and the Declaration of Richard John Rinard in
support of Joint Emergency Motion of Debtor and Trustee for Order Determining that
Automatic Stay Pursuant to 11 U.S.C. §362(a) Has Not Been Terminated With Respect to the
Estate (Dk. No. 44).

the estate by operation of 11 U.S.C. §362(c)(3)(A).  On May 3, 2011, the Court conducted a

hearing and declined to issue an order on the subject of the pending motion, because, in the

Court's opinion, a controversy was not present at that particular time (i.e. the motion was not

ripe), and the procedure utilized would have required an impermissible advisory opinion.

On May 3, 2011, a Complaint entitled "Complaint for 1. Declaratory Relief; 2. Injunctive

Relief; and 3. Damages for Willful Violation of Automatic Stay," was filed by the Debtor and the

Trustee against the Defendant, as well as their Motion which seeks entry of a temporary

restraining order and/or a preliminary injunction order enjoining Defendant and its officers,

agents, servants, employees, and attorneys and those in active concert or participation with

them, from foreclosing on the Foothill Parcels.

As a precursor to the requested relief, the Movants and Respondent both directly

address the presence of the decision of the Ninth Circuit Bankruptcy Appellate Panel's

decision in *Reswick v. Reswick (In re Reswick)*, 2011 Bankr. LEXIS 873, 6-8 (B.A.P. 9th Cir.

Feb. 4, 2011).  The Movants explain,

> "[n]otwithstanding the plain meaning of 11 U.S.C. § 362(c)(1)—that the stay as to
> estate property continues until such property is no longer property of the estate—the
> Bankruptcy Appellate Panel recently published a case arising in a Chapter 13 which
> concluded that the stay terminated as to the debtor and the estate upon expiration of
> the 30 day period in the second bankruptcy case. See, In re Reswick, --- B.R. ----,
> 2011 WL 612728, NC-10-1154-SAHKI, (9th Cir. BAP February 4, 2011). While the
> unstated assumption in Reswick is that Section 362(c)(1) does not compel a different
> result, the failure of the BAP to address this issue results in the case not being
> persuasive or binding authority on this issue. As such, the declaratory relief issue
> presented in Movants' Complaint is a question of first impression on an important
> issue regarding whether a trustee as the estate's representative loses the protections
> of the stay as to estate property after 30 days have elapsed in a second bankruptcy
> case filed within one year after dismissal of a prior case. Debtor's counsel is aware
> that the Reswick case has been appealed to the Ninth Circuit.

Motion, page 2:26-28 through page 3:1-9.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Respondent also addresses *Reswick*. "On February 14, 2011, the Ninth Circuit

BAP issued a decision in *In re Reswick*, which provides the most recent precedential authority

in the circuit interpreting Bankruptcy Code section 362(c)(3)(A). (Citation omitted)."

Opposition, page 3:17-19.

The Respondent further states that this Court is bound by the BAP's *Reswick* decision

because "[t]he principle of *stare decisis* requires federal courts to adhere to the opinions of

higher courts and "'to the explications of the governing rule of law.'" (citations omitted.)

Opposition, page 4:3-4.  Citing several Ninth Circuit decisions on the general premises of *stare

decisis*, the Respondent grounds its assertion that this Court is bound by *Reswick* firmly on the

Ninth Circuit BAP's own decision of 1987, *In re Windmill Farms, Inc.,* 70 B.R. 618, 621 (9th Cir.

1987), rev'd on other grounds, 841 F.2d 1467 (9th Cir. 1988).

The parties address *Reswick* on the issue of whether there continues to exist the

automatic stay *as to property of the Estate*, under 11 U.S.C. §362(a), for if the automatic stay

continues in existence as to property of the Estate, then a decision to issue a Temporary

Restraining Order ("TRO") or Preliminary Injunction ("PI") by this Court may be unnecessary.

Indeed, the determination by this Court of whether the automatic stay remains in force as to

the Estate must rest heavily on the minds of the Debtor, the Trustee and the Respondent.   If

the foreclosure proceeding is not enjoined by this Court, and the automatic stay has been

terminated as to the Debtor and the Estate, the Foothill Parcels are at risk of being lost to the

detriment to the Estate's creditors and any residual estate surplus to the Debtor.  If the

automatic stay was in effect on April 11, 2011, then the Respondent has violated the automatic

stay, perhaps unintentionally, perhaps not.  Moreover, the Ninth Circuit has made it clear that

the Respondent has an affirmative duty to reverse its actions in the instance of a violation of

the automatic stay, once it learns of the automatic stay, or else the action is elevated to a

willful violation of the stay.  "Consistent with the plain and unambiguous meaning of the statute, and consonant with Congressional intent, we hold that § 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. Cal. 2002). Clearly, the Respondent is wary of potential sanctions and awards of attorneys' fees against it.  Therefore, in addressing the need for a TRO or PI, the Court must first determine whether the automatic stay is in effect as to the Estate.

**The Automatic Stay's Effect Under 11 U.S.C. § 362(c)(3)(A).**

11 U.S.C. § 362(c)(3)(A) reads, in pertinent part:

"(3) if a single or joint case is filed by or against debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707 (b)—

(A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease *shall terminate with respect to the debtor* on the 30th day after the filing of the later case…"

11 U.S.C. § 362(c)(3)(A) (*emphasis added.*)

The relevant portion of the section, for our purposes today, are the words "shall terminate with respect to the debtor." Indeed, this discussion would most likely not be occurring if the Congress has simply added "or the estate" to the sentence in § 362(c)(3)(A).  But Congress didn't, and here we are.

The Ninth Circuit BAP's *Reswick* decision sets out, with remarkable clarity, both the majority and minority positions of the nation's bankruptcy courts with respect to whether the automatic stay remains in effect as to the bankruptcy estate, by the effect of the provisions of 11 U.S.C. § 362(c)(3)(A).  As to the majority view – that the automatic stay does not terminate as to the estate under the terms of § 362(c)(3)(A) -- *Reswick* teaches

The majority interpretation finds the phrase "with respect to the debtor" to be both critical and unambiguous, and concludes that on the 30th day after the petition date, the automatic stay terminates only with respect to the debtor and the debtor's property, but not as to property of the estate. See, e.g., Holcomb v. Hardeman (In re Holcomb), 380 B.R. 813 (10th Cir. BAP 2008); Jumpp v. Chase Home Finance, LLC (In re Jumpp), 356 B.R. 789 (1st Cir. BAP 2006); In re Pope, 351 B.R. 14 (Bankr. D.R.I. 2006); In re Murray, 350 B.R. 408 (Bankr. S.D. Ohio 2006); In re Brandon, 349 B.R. 130 (Bankr. M.D.N.C. 2006); Bankers Trust Co. of Cal. v. Gillcrese (In re Gillcrese), 346 B.R. 373 (Bankr. W.D. Pa. 2006); In re Williams, 346 B.R. 361 (Bankr. E.D. Pa. 2006); In re Harris, 342 B.R. 274 (Bankr. N.D. Ohio 2006); In re Jones, 339 B.R. 360 (Bankr. E.D.N.C. 2006); In re Moon, 339 B.R. 668 (Bankr. N.D. Ohio 2006); In re Johnson, 335 B.R. 805 (Bankr. W.D. Tenn. 2006). Although these decisions state that the court need not read beyond the phrase "with respect to the debtor" to discern its meaning, see, e.g., Jones, 399 B.R. at 363 ("Section 362(c)(3)(A) provides that the stay terminates 'with respect to the debtor.' How could that be any clearer?"), these decisions arguably do read beyond the phrase because they find that the stay terminates with respect to the debtor and to any property of the debtor that is not property of the estate. Id. at 362; see also Holcomb, 380 B.R. at 816 ("[W]e conclude that the language of § 362(c)(3)(A) terminates the stay only as to the debtor and the debtor's property."); Jumpp, 356 B.R. at 797 ("Section 362(c)(3)(A) provides for a partial termination of the stay.").

Reswick v. Reswick (In re Reswick), 2011 Bankr. LEXIS 873, 6-8 (B.A.P. 9th Cir. Feb. 4, 2011).

As to the minority view – that the automatic stay terminates as to both the Debtor and the Estate, *Reswick* described the view as follows:

"The minority interpretation urges that the phrase "with respect to the debtor" must be analyzed in the context of section 362(c)(3) as a whole. See In re Jupiter, 344 B.R. 754 (Bankr. D.S.C. 2006), expanded upon in In re Daniel, 404 B.R. 318 (Bankr. N.D. Ill. 2009), and adopted in two subsequent decisions including the order on appeal here. Using this analysis, these courts conclude that section 362(c)(3)(A) terminates the automatic stay in its entirety (i.e., with respect to the debtor, the debtor's property and property of the estate). Id. at 329; Jupiter, 344 B.R. at 759; In re Furlong, 426 B.R. 303, 307 (Bankr. C.D. Ill. 2010). They construe "the remaining language of 'with respect to the debtor' to define which debtor is effected by this provision, with reference to section 362(c)(3)." Jupiter, 344 B.R. at 759. Because section 362(c)(3) begins by referencing either a "single or joint case," the language "with respect to the debtor" in section 362(c)(3)(A) simply distinguishes between the debtor and the debtor's spouse. Id.; Daniel, 404 B.R. at 326. The courts found further support in the legislative history of section 362(c)(3)(A), noting its intent to address the perceived abuse of successive filings. Id. at 327; Jupiter, 344 B.R. at 761. See also In re Curry, 362 B.R. 394 (Bankr. N.D. Ill. 2007)(interpreting section 362(c)(3)(A) to terminate the automatic stay in its entirety is consistent with history aimed at discouraging successive bankruptcy filings)."

*Reswick v. Reswick (In re Reswick),* 2011 Bankr. LEXIS 873, 8-9 (B.A.P. 9th Cir. Feb. 4, 2011).

In one single sentence, and *contra* to the minority view that it chooses to adopt (see below), the BAP in *Reswick* determined, or rather "designates", that the language of §362(c)(3)(A) is ambiguous. ("And while we recognize the desire to be cautious in designating statutory text as "ambiguous," we believe that such a designation is appropriate here." *Reswick* at 9-10.) The BAP did not determine that the language was ambiguous because they did not understand the sentence "the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease *shall terminate with respect to the debtor* on the 30th day after the filing of the later case…". Instead, the BAP admits, in the preceding sentence of its decision, that the minority view does not "expressly" determine the language of §362(c)(3)(A) to be "ambiguous".

> "The minority approach does not expressly determine that the language is ambiguous but reads "with respect to the debtor" in context with section 362(c)(3) as a whole and then looks to the provision's legislative history to support their reading. Because reading the phrase in context, rather than in isolation, better comports with principles of statutory construction, the minority interpretation is more persuasive."

*Reswick* at 9.

The BAP designates the text of the provision as ambiguous only because it believes that the phrase "with respect to the debtor" is not placed there by Congress to differentiate between property of the debtor and property of the estate, but instead to give certain meaning (the meaning assigned by the *Reswick* BAP) to the remaining provisions of § 362(c)(3). The *Reswick* BAP thus believes that the legislative scheme within §362(c)(3) is the ideal legislative context to place the language of §362(c)(3)(A), and so engages. Others disagree.

As the Tenth Circuit BAP stated in *In re Holcomb*, 380 B.R. 813, 816 (BAP 10th Cir. 2008):

First, we see no ambiguity in the language of the statute. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985). Nowhere in § 362 does Congress use the phrase "with respect to the debtor" as incorporating the debtor, the debtor's separate property, and property of the estate. In fact, "[s]ection 362(a) differentiates between acts against the debtor, against property of the debtor and against property of the estate." Jones, 339 B.R. at 363. As observed in Jones, "a plain reading of those words ['with respect to the debtor'] makes sense and is entirely consistent with other provisions of § 362 and other sections of the Bankruptcy Code." Id.

Reading this statute according to its plain meaning is also consistent with the policies behind bankruptcy law. At the core of bankruptcy law is the policy of "obtaining a maximum and equitable distribution for creditors." BFP v. Resolution Trust Corp., 511 U.S. 531, 563, 114 S. Ct. 1757, 128 L. Ed. 2d 556 (1994); Research-Planning, Inc. v. Segal (In re First Capital Mortgage Loan Corp.), 917 F.2d 424, 428 (10th Cir. 1990) (noting that the preference provisions found in 11 U.S.C. § 547 further this important policy). The minority approach circumvents this policy by allowing a single creditor, who may be oversecured, full access to property that would otherwise be property of the estate. Such property may be necessary to implement a debtor's Chapter 13 plan; or, in a Chapter 7 case, equity in the property above the creditor's security interest could be realized by the trustee to pay a dividend to creditors. This dividend could potentially be lost if we adopt the reasoning of the bankruptcy court. Maintaining the stay with respect to such property is an important creditor protection.

*Holcomb v. Hardeman (In re Holcomb),* 380 B.R. 813, 816 (B.A.P. 10th Cir. 2008).

That the facts of *Reswick* specifically involve a Chapter 13 debtor, where an ex spouse, one of the creditors of the debtor, garnished the post-petition wages of the debtor to collect monies perhaps entitled to a priority distribution, which were property of the Chapter 13 estate, is not lost on this Court.  If *Reswick* stands on appeal with the Ninth Circuit, the outcome of the decision provides money for the ex-wife, and a failed Chapter 13 plan for the rest of the creditors.  Thus, other provisions of the Bankruptcy Code providing an ex-spouse creditor with priorities for alimony and support are rendered meaningless by the decision of *Reswick*. Under *Reswick's* determination, a creditor race to the courthouse exists.  This overturns the primary overarching two premises of federal bankruptcy law – a fresh start for an honest debtor and equal treatment among classes of creditors.

The facts of the Tenth Circuit BAP's *Holcomb* decision fit squarely with the facts of the instant case (where a secured creditor attempts to foreclose on estate property), and

demonstrate that the plain meaning standard of legislative interpretation can also result in consistent and accurate expressions of legislative intent and goals.

The plain text of §362(c)(3)(A) is crystal clear that the automatic stay is terminated with respect to the Debtor. There is no mention of the Estate in the text. There are no fuzzy words; there are no hanging paragraphs; there are no words requiring a dictionary.  And, the context of the language gives meaning to the Bankruptcy Code's design to permit the Chapter 7 trustee to administer the estate unimpeded by individual creditors who may otherwise obtain windfalls at the expense of the other creditors of the estate.  (As noted above, under the facts of *Reswick*, the plain meaning interpretation of the section in question would also provide for the overarching and primary goals of the Bankruptcy Code – a Chapter 13 reorganization that provides a fresh start for the debtor and equal treatment (and perhaps superior treatment due to the statutory priorities provided for obligations to an ex-spouse)).

To achieve the results of the minority view and *Reswick,* Congress was only required to add three more words to the section – "and the estate" – which Congress did not do.  This Court will also not step into the shoes of Congress.  The "majority" views are the correct ones in this instance.

### The Binding Effect of the Ninth Circuit BAP Within this Court's Own District.

The Respondent asserts that this Court is bound by the decision *In re Reswick.* In support of its assertion, it states "[o]n February 14, 2011, the Ninth Circuit BAP issued a decision in *In re Reswick*, which provides the most recent precedential authority in the circuit interpreting Bankruptcy Code section 362(c)(3)(A). (citation omitted)."  Opposition, page 3:17-19. This Court, according to the Respondent, is bound by the BAP's *Reswick* decision because "[t]he principle of *stare decisis* requires federal courts to adhere to the opinions of higher courts and "'to the explications of the governing rule of law.'" (citations omitted.) Opposition, page 4:3-4.  Citing several decisions on the general premises of *stare decisis*, the Respondent mainly grounds its assertion that this Court is bound by *Reswick* firmly on the Ninth Circuit BAP's own decision of 1987, *In re Windmill Farms, Inc.,* 70 B.R. 618, 621 (9th Cir. 1987), rev'd on other grounds, 841 F.2d 1467 (9th Cir. 1988).

1
2
3
4
5
6
7
8
9
10
11
12
13

Much has been written within the Ninth Circuit regarding the precedential value of BAP decisions.  *In re Windmill Farms, Inc.*, a 1988 decision written by a panel consisting of three Article I bankruptcy judges, opined that their own Ninth Circuit BAP decisions are to be treated with precedential value.  Other courts have held otherwise. "The decisions of the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") do not carry the weight of stare decisis.  *In re Bank of Maui*, 904 F.2d 470, 471 (9th Cir. 1990). The decisions of the BAP are binding only on the judges whose orders have been reversed or remanded by the BAP in that particular dispute. In all other instances, the decisions of the BAP are effective only to the extent they are persuasive." *CASC Corp. v. Milner (In re Locke),* 180 B.R. 245, 254 (Bankr. C.D. Cal. 1995). The citation to *In re Bank of Maui* by the Bankruptcy Court in *In re Locke* is only slightly amiss, since the Ninth Circuit in *Locke* ultimately held that the determination of whether BAP decisions were controlling *would not be decided* because:

14
15
16
17

> "We need not and do not decide the authoritative effect of a BAP decision because, for the purposes of Bankruptcy Rule 9011, *its binding effect is so uncertain* that it cannot be the basis for sanctioning a party for seeking a contrary result in a district where the underlying issue has never been resolved. Accordingly, the Bank's reliance on Marin Aviation was not clearly frivolous and unreasonable."

18

*Bank of Maui v. Estate Analysis*, 904 F.2d 470, 472 (9th Cir.1990) *(emphasis added)*.

19
20
21
22
23
24
25
26

However, *Windmill* was decided in 1988, and *Bank of Maui* was decided in 1990. This Court finds that Congress determined, in 2005, that BAP decisions have no authoritative or precedential effect.  On April 20, 2005, the President signed into law the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 ("BAPCPA"). Among other things, BAPCPA authorizes the direct appeal of a bankruptcy court order to the court of appeals on certification from the appropriate court and acceptance by the court of appeals. 28 U.S.C.S. §158(d)(2).

27
28

Specifically, appellate jurisdiction was altered in BAPCPA by addition of the provision that the Circuit Courts of Appeal have jurisdiction for all final orders of a bankruptcy court and

may take an appeal directly *if the bankruptcy court, district court, **or Bankruptcy Appellate Panel**, on the lower court's own motion or on the motion of a party to the judgment, certifies that the bankruptcy court's final order involves a question of law on which there is no controlling decision in that circuit or that the issue involves one of public importance, or that an immediate appeal is otherwise necessary.* If Congress believed that decisions of BAPs across the nation were authoritative and precedential (which would then grant BAPs more authoritative/precedential value than Article III district courts surely possess), there would have been no need to include BAPs with the power to certify direct appeals from bankruptcy courts to Circuit Courts of Appeals. The BAP could simply take the appeal, forget certification, and provide authoritative pronouncements, *tout de suite.* Implicit in the inclusion of the BAP as a "certifier" is the Congressional determination that BAPs could not make authoritative or precedential determinations, and instead confirm that Circuit Courts of Appeals are to exercise this role.

BAP decisions are not binding on bankruptcy courts, as district court decisions are not. The arguments set forth in the multitude of cases determining that panels composed of Article I judges to hear bankruptcy court appeals do not have the inherent power to make authoritative or precedential decisions, especially if Article III district courts hearing the same appeals have no such control, were convincing enough. Congress, in 2005, finished the argument.

For all of the reasons stated above, this Court finds that (1) the Respondent has not obtained relief from stay to proceed with any foreclosure activities respecting the Foothill Parcels; (2) the automatic stay as provided by 11 U.S.C. §362(a) remains in force as to property of the Estate; (3) the Foothill Parcels are property of the Estate in this case; (4) the Foothill Parcels hold equity that inure to the benefit of the Estate and/or the Debtor; (5) the Respondent has violated the automatic stay by noticing the Trustee Sale and will further

willfully violation the stay if it causes a foreclosure sale; and (6) Respondent already has transmuted the violation of the automatic stay into a willful violation of the automatic stay by not affirmatively reversing its actions.

### The Requirement for a Temporary Restraining Order or Preliminary Injunction Order

The next step is to determine whether the Movants are entitled to a Temporary Restraining Order ("TRO") or Preliminary Injunction ("PI") Order.

Injunctive relief is available in bankruptcy court in two ways: pursuant to the court's discretionary and inherent equitable power under §105(a) "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," or under the auspices of Bankruptcy Rule 7065, which makes Federal Rule 65 applicable in adversary proceedings.

The Movants have requested this Court to consider their Motion and request under Rule 7065 and Federal Rule 65.  The Court is not bound by the Motion to restrict its basis for issuing a TRO or PI under Federal Rule 65.  Section 105(a) of the Bankruptcy Code serves the same purpose, as described below.  Nevertheless, the same standards for issuing such injunctions are applicable.  The Court will examine whether grounds exist for a TRO and/or PI to issue.

"The standards for granting a temporary restraining order and a preliminary injunction are identical." *Haw. County Green Party v. Clinton*, 980 F. Supp. 1160, 1164 (D. Haw. 1997); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order). The Ninth Circuit recently modified its standard for preliminary injunctive relief to conform to the Supreme Court's admonition in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 375-76, 172 L. Ed. 2d 249

(2008), that the moving party must demonstrate that, absent an injunction, irreparable injury is not only possible, but likely.

Under Federal Rule 65, the traditional criteria for issuing a preliminary injunction are: "1) a strong likelihood of success on the merits, 2) the possibility of (now likely, not just possible) irreparable injury to plaintiff if the preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest (in certain cases)." *Morgan-Busby v. Gladstone (In re Morgan-Busby),* 272 B.R. 257, 261 (9th Cir. B.A.P. 2002).

### (1)  Strong Likelihood of Success on the Merits

The Movant's Complaint asserts that the Respondent's actions in proceeding with the foreclosure activities violate 11 U.S.C. §362(a) in that estate property is being foreclosed upon. The Court is not required to determine whether the Movants will succeed on the merits of their cause of action, but is only required to determine whether there is a strong likelihood of success on this cause of action.  For all of the reasons set forth in this Memorandum Opinion as to why the automatic stay is still effective as to estate property, it is clear to this Court that there is a strong likelihood of success on the merits.

With respect to the Complaint's asserting that the Notice of Default filed with respect to the Foothill Parcels is defective, there is evidence presented as to this matter within the Hays Declaration that accompanies the Motion that corresponds to the allegations contained in ¶¶ 14, 15 and 16.  Limited legal analysis is presented to the Court on these allegations by any party appearing on this Motion, and the Court cannot determine the merits of these allegations at this stage.  Therefore, the Court cannot assert that there is, or is not, a strong likelihood of success on the merits with respect to the NOD arguments. However, as the Violation of the Stay cause of action stands alone for these purposes, the Court can await further briefing and fact-finding at the PI stage of the process.

### (2) The Likelihood of Irreparable Injury to Plaintiff

According to the Movant, the foreclosure sale has been noticed for May 17, 2011. If the Respondent continues to go forward with its foreclosure sale, and whether or not a bona fide purchaser were to obtain the property through a trustee sale, the bankruptcy estate could be irreparably harmed by not having the opportunity to maximize recovery to the creditors of the estate, by utilizing the equity in the Foothill Parcels. That equity has already been established, for purposes of this Order only.

The Movants' reliance with respect to the required showing of irreparable harm on *FSLIC v. Sahni*, 868 F.2d 1096 (9th Cir. 1999), in light of the Supreme Court's decision in *Winter, supra,* is misplaced. The correct standard is "likely irreparable harm," not possible irreparable harm.

If more than nominal equity exists in the Foothill Parcels that would inure to the benefit of the Estate and/or the Debtor, than the likelihood of irreparable harm to the Plaintiffs exists. The Respondent is protected by an equity cushion in the Foothill Parcels, and suffers little or no harm by a delay in the foreclosure process at this time.

### (3)  Balance of Hardships Favoring the Plaintiff

The Movants assert that there is no requirement to balance hardships in circumstances of intentional conduct by defendants, citing *United States v. Marine Shale Processors*, 81 F.3d 1329, 1359 (5th Cir. 1996). Within that case, the Fifth Circuit identified certain cases involving "willful acts" that might not require a balancing of the hardships, including *Louis W. Epstein Family P'Ship v. KMart Corp.*, 13 F.3d 762, 769-70 (1994) (Pennsylvania law, encroachment on land); *Kratze v. Indep.Order of Oddfellows*, 442 Mich. 136, 500 N.W.2d 115, 121 & n.10 (Mich. 1993) (land encroachment); *Amabile v. Winkles*, 276 Md. 234, 347 A.2d 212, 216-17 (Md. 1975) (land); *Normandy B. Condominium Ass'n, Inc. v. Normandy C. Ass'n, Inc.*, 541 So.

2d 1263 (Ct. App. Fla. 1989) (interference with an easement); *Barrett v. Lawrence*, 110 Ill.

App. 3d 587, 442 N.E.2d 599, 603, 66 Ill. Dec. 173 (Ill. App. 1982) (failure to deposit money in

an escrow); *Christensen v. Tucker*, 114 Cal. App. 2d 554, 250 P.2d 660, 665-66 (Cal. App.

1952) (land encroachment);. *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d

1325, 1333-34 (7th Cir. 1977) (trademark infringement), *cert. denied,* 434 U.S. 1070, 55 L. Ed.

2d 772, 98 S. Ct. 1252 (1978); and *E.F. Johnson Co. v. Uniden Corp. of America*, 623 F. Supp.

1485, 1504 (D. Minn. 1985) (patent infringement).  *See United States v. Marine Shale

Processors*, 81 F.3d 1329, 1359 (5th Cir. 1996).

This Court sees no reason in this case to divert from the traditional standards for issuing

a TRO or PI, and based on the instant facts is not required to do so.  The Defendant's hardship

is slight (i.e. a delay receiving payment without risk because of the equity cushion in the

Foothill Parcels) compared to the Movants' risk of permanent loss of the real property or its

equity value over a relatively short period of time.  The Court finds that the hardships balance

in favor of the Plaintiffs.

### (4) Advancement of the Public Interest

Unless the Court considers that there is a public interest for (or against) the issuance of

a TRO or PI within the circumstances of this case (and there might be an argument to be made

that it is in the public interest to curtail violations of the automatic stay), the case is not one

where advancement of the public interest is relevant.  Therefore, the Court finds that a

determination of this component of the standard is unnecessary.

### This Court's Powers under 11 U.S.C. §105

Under 11 U.S.C. § 105(a), a bankruptcy court "may issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title." Section

105(a) gives the bankruptcy courts the power to stay actions that are not subject to the 11

U.S.C. § 362(a) automatic stay (footnote omitted) but "threaten the integrity of a bankrupt's estate." *Canter v. Canter (In re Canter),* 299 F.3d 1150, 1155 (9th Cir. 2002) (citation and quotation marks omitted); *Ingersoll-Rand Fin. Corp. v. Miller Mining Co.*, 817 F.2d 1424, 1427 (9th Cir. 1987)."  *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.),* 502 F.3d 1086, 1093 (9th Cir. 2007).  The Ninth Circuit, in Solidus Network further found that the usual preliminary injunction standard applies to stays of proceedings against non-debtors under § 105(a). *Solidus* at 1094.

   For the same factual reasons, and applying the same standards that this Court determined that a TRO should issue under Federal Rule 65, as made applicable by Bankruptcy Rule 7065, the Court finds that the ruling may be jointly based on 11 U.S.C. §105(a).

## Conclusion and Order

   In accordance with my Memorandum of Opinion this date,

   **IT IS HEREBY ORDERED** that Defendant Positive Investments Inc. and its officers, agents, servants, employees, and attorneys and those in active concert or participation with them, are hereby temporarily restrained from foreclosing on commercial real property of the bankruptcy estate commonly known as 1812 - 1816 W. Foothill, Upland, CA, 91786 (the "Foothill Parcels").

   **IT IS FURTHER ORDERED** that Positive Investments, Inc. is ordered to appear in Courtroom 5C of this court, located at 411 West Fourth Street, Santa Ana, California, on May 25, 2011 at 11:00 a.m., and show cause, if any, why a Preliminary Injunction should not issue enjoining Positive Investments Inc. and its officers, agents, servants, employees, and attorneys and those in active concert or participation with them from foreclosing on commercial real

property of the bankruptcy estate commonly known as 1812 - 1816 W. Foothill, Upland, CA,

91786 (the "Foothill Parcels").

    **IT IS FURTHER ORDERED** that further pleadings from  Positive Investments, Inc. as to

this matter, must be electronically filed and physically served on counsels for the Debtor and

Trustee by 12:00 p.m. pacific time, at least two days before the aforesaid hearing, with copies

physically delivered to chambers by 12:00 p.m. pacific time on that day.  Any Reply filed by the

Debtor or Trustee must be electronically filed and physically served on counsels for the Debtor

and Trustee by 12:00 p.m. pacific time, at least one day before the aforesaid hearing, with

copies physically delivered to chambers by 12:00 p.m. pacific time on that day.

###

DATED: May 9, 2011

_____
United States Bankruptcy Judge

- 19

**NOTE TO USERS OF THIS FORM**:

1) Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief.  <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM OPINION** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING</u> (**"**<u>NEF</u>**"**)** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of <u>May 9, 2011</u>, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Lori E Eropkin     leropkin@laklawyers.com
- Helen R. Frazer (TR)     hfrazer@aalrr.com,
  mbuenaventura@aalrr.com;hfrazer@ecf.epiqsystems.com,C112@ecfcbis.com
- D Edward Hays     ehays@marshackhays.com
- United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov
- Darlene C Vigil     cdcaecf@bdfgroup.com

☐ Service information continued on attached page

**II.  <u>SERVED BY THE COURT VIA U.S. MAIL</u>:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III.     <u>TO BE SERVED BY THE LODGING PARTY</u>:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page